UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CASSANDRA BARLEY,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        Case No. 07-CV-0240-CVE-PJC
                                     )
WAL-MART ASSOCIATES, INC.,           )
                                     )
                                     )
            Defendant.               )

OPINION AND ORDER

Now before the Court is Defendant's Motion to Dismiss (Dkt. # 8) filed by Wal-Mart

Associates, Inc. ("Wal-Mart").  Plaintiff Cassandra Barley ("Barley") filed a complaint on April 25,

2007 alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-2 et seq. ("Title VII").  Defendant argues that plaintiff's complaint should

be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the ground that plaintiff failed to

file a timely charge of discrimination with the Equal Employment Opportunity Commission

("EEOC").  For the reasons set forth below, the Court finds that defendant's motion should be

denied.

I.

Defendant Wal-Mart hired plaintiff Barley in November 2003 as a sales associate in the deli

department.  Dkt. # 2, ¶ 9.  Beginning sometime between October and November 2004, plaintiff

alleges that her shift lead, Bryon Watson ("Watson"), made inappropriate sexual advances toward

her.  Id. ¶ 10.  These advances continued through December 2004, when plaintiff took a maternity

leave.  Id. Upon returning to the deli department in April 2005, plaintiff alleges that she was

immediately confronted with co-workers' allegations that she had engaged in sexual relations with Watson.  Id. ¶ 11.  Moreover, Watson's "unwelcome inappropriate sexual comments, innuendos and jokes" continued.  Id. ¶ 12.

As a result of this continued behavior, Barley reported Watson to her supervisor, Alan Stewart ("Stewart"), as well as to the manager of the deli department, in May 2005.  Id. ¶ 13; Dkt. # 14, at 7.  Stewart informed plaintiff that she should report Watson's behavior to the store manager, Decona Smith ("Smith").  Dkt. # 2, ¶ 13.  Several days later, Smith summoned plaintiff to his office and asked her to write down her complaint.  Id. ¶ 14.  Approximately one week later, Smith informed plaintiff that "everyone involved in the immediate situation" would face reprimand.  Id. ¶ 15.  Plaintiff maintains that from the time of her initial report until her termination on June 6, 2005 for "gossip," Watson's inappropriate sexual behavior persisted unabated.  Id. ¶¶ 16-17.

Barley completed an EEOC information sheet regarding her discrimination claim on February 9, 2006.  Dkt. # 14, at 2.  The top of the information sheet stated, "THIS IS NOT A CHARGE OF DISCRIMINATION.  MAIL IN INFORMATION SHEET FOR FILING A CHARGE OF DISCRIMINATION."  Dkt. # 14-3, at 1 (emphasis in original).  The information sheet instructed plaintiff to sign and date the correspondence: "FAILURE TO DO SO WILL DELAY THE PROCESSING OF YOUR CHARGE."  Id.  In the information sheet, plaintiff included her name, address, telephone number, birth date and social security number.  Id.  She specified defendant's name, mailing address, and number of employees.  Id.  She further indicated that she had a claim of sex discrimination, and that she had been discharged and harassed.  Id. at 2.  Plaintiff also attached a brief, detailed account of the alleged incidents, including pertinent dates, in an accompanying affidavit.  Id. at 2-3.

Along with the information sheet and attached affidavit, plaintiff included a discharge questionnaire, a sexual harassment questionnaire, a retaliation questionnaire, and a discharge affidavit. See Dkt. # 14, Ex. 3-6. These documents supplemented the information initially stated in the information sheet. See id. They also included a "Privacy Act Statement," which informed plaintiff that "[t]he purpose of this questionnaire is . . . to enable the Commission to avoid the intake of matters not within its jurisdiction. When this form constitutes the only timely written [allegation of] . . . discrimination, the Commission will, consistent with 29 C.F.R. 1601.12(b) and 29 C.F.R. 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." Dkt. #14-5, at 6. Further, the sexual harassment and retaliation questionnaires included the following statement, signed by plaintiff: "I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct." Dkt. # 14-5, at 5; Dkt. # 14-6, at 3. Both affidavits were signed by plaintiff and notarized. See Dkt. # 14-7, at 3; Dkt. # 14-8, at 3.

On February 19, 2006, the EEOC sent a Notice of Charge of Discrimination to Wal-Mart, identifying the EEOC charge number and stating that an "unperfected charge" had been received.[1] Dkt. # 14, Ex. 9. The EEOC also sent a letter to plaintiff confirming that a "potential charge" had been received and instructing her to contact the specified EEOC agent if she had any questions in reference to her "charge." Dkt. # 14, Ex. 8. Approximately two weeks later, the EEOC sent plaintiff a letter with a draft of her "Charge of Discrimination" enclosed. Dkt. # 14-13. The letter instructed plaintiff to make any corrections or additions, sign and date the form, and return the document by the close of business on March 21, 2006. Id. Plaintiff did not sign and return the verified, EEOC

---

[1]     The EEOC sent Wal-Mart a second Notice of Charge of Discrimination on April 19, 2006. This notice included plaintiff's name, the circumstances of the alleged discrimination and a copy of "the Charge." See Dkt. # 14, Ex. 10.

3

Form 5 "Charge of Discrimination" until April 11, 2006, 309 days after her allegedly unlawful

termination.  See Dkt. # 8, at 2; Dkt. # 14-12.  The EEOC subsequently issued plaintiff a right-to-sue

letter.  Dkt. # 14-14.  On the form, the EEOC did not check the box indicating that plaintiff's

"charge was not timely filed" but instead declined to bring suit on plaintiff's behalf based on their

investigatory findings.  Id.

## II.

A motion to dismiss is properly granted when it appears beyond doubt that the plaintiff could

prove no set of facts entitling her to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

Ramirez v. Dept. of Corrs., 222 F.3d 1238, 1240 (10th Cir. 2000).  In considering a motion to

dismiss under Fed. R. Civ. P. 12(b)(1), a court must determine whether the plaintiff can establish

that the court has jurisdiction over the defendant.  In addressing whether dismissal under Rule

12(b)(1) for lack of subject matter jurisdiction is appropriate, a court may consider documents

submitted by the parties to resolve any jurisdictional fact questions.  See Sizova v. Nat'l Inst. of

Standards & Tech., 282 F.3d 1320, 1324-25 (10th Cir. 2002) (requiring conversion to a motion for

summary judgment under Fed. R. Civ. P. 56 only when the jurisdictional question is intertwined

with the merits of the case).  Here, plaintiff has submitted materials outside of the pleadings.  The

Court need not convert this motion to one for summary judgment, however, because the

jurisdictional question is not intertwined with the merits of this case.  Id. ("[T]he jurisdictional issue

is whether [plaintiff] has exhausted her administrative remedies, a matter that is simply not an aspect

of her substantive claim of discrimination [under Title VII].");  see Holowecki v. Fed. Express Corp.,

440 F.3d 558, 565 (2d Cir. 2006), cert. granted, ___ U.S. ___, 127 S. Ct. 2914 (2007) ("In reviewing

the Rule 12(b)(6) ruling, it is proper for this court to consider the plaintiff's relevant filing with the

EEOC and the declaration that [plaintiff] submitted to the district court, none of which were attached to the complaint, because the [] plaintiff[] rel[ies] on these documents to satisfy the [statutory] time limit requirements."). Accordingly, the Court will consider plaintiff's proffered affidavits and other documents.

Additionally, in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether plaintiff has stated a claim upon which relief may be granted. The Tenth Circuit has referred to dismissal under Rule 12(b)(6) as a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006) (citing Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001)). A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). For purposes of making these determinations, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. Ramirez, 222 F.3d at 1240; Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs., 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "The issue is not whether the plaintiff will ultimately prevail, but whether [she] is entitled to offer evidence to support [her] claims." Cooper Mfg. Corp. v. Home Indem. Co., 131 F. Supp. 2d 1230, 1232 (N.D. Okla. 2001).

Here, the Court must resolve whether plaintiff has properly stated a claim upon which relief may be granted, in light of plaintiff's alleged failure to exhaust her administrative remedies within

the statutory period.  The parties dispute two issues at this stage in the proceedings: (1) whether the intake materials qualify as an administrative charge under the particular circumstances of this case; and (2) if the intake materials qualify as such, whether the allegedly unlawful acts which occurred outside the statutory period are actionable.

### III.

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks and citation omitted).  "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms v. Okla. ex. Rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).  Thus, if a plaintiff did not exhaust her administrative remedies, a court does not have jurisdiction to consider her Title VII claims.

To exhaust administrative remedies, a plaintiff must timely file a charge of discrimination with the EEOC.  See 42 U.S.C. § 2000e-5(b).  For a charge to be timely in a deferral state like Oklahoma,[2] the charge must be filed within 300 days of the last discriminatory act.  See id.  The Tenth Circuit has recently adopted the "manifestation of intent" test in determining whether intake materials may qualify as a "charge." See Jones v. United Parcel Serv., Inc., ___ F.3d ___, 2007 WL 2677141, at * 4-5 (10th Cir. Sept. 13, 2007); see also Montes v. Vail Clinic, Inc., ___ F.3d ___, 2007 WL 2309766, at *2 (10th Cir. Aug. 14, 2007) (noting that most circuits apply some variant of the "manifestation of intent" test); Holowecki, 440 F.3d at 566-69 (holding that an intake questionnaire

---

[2]     Whether a state is deferral or non-deferral depends on the existence of state or local fair employment practice agencies.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Shempert v. Harwick Chem. Corp., 151 F.3d 793, 796 n.3 (8th Cir. 1998).

6

and accompanying affidavit may serve as a charge, as long as the written filing contains the required information and demonstrates a party's intent to activate the administrative process); Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1319-20 (11th Cir. 2001) (concurring with other circuits' findings that the intake questionnaire may serve as a charge of discrimination if the facts of the case demonstrate that the complainant manifested an intent to activate the administrative process); Philbin v. Gen. Elec. Capital Auto Lease, Inc., 929 F.2d 321, 324-25 (7th Cir. 1991) (per curiam); Bihler v. Singer Co., 710 F.2d 96, 99 (3d Cir. 1983). Jones held that, under this doctrine, an intake questionnaire may qualify as a charge if: (1) the questionnaire satisfies the EEOC's minimum requirements for a charge; (2) the plaintiff intended to activate the administrative process as indicated by the circumstances of the case; and (3) the EEOC ultimately treated the questionnaire as a charge. 2007 WL 2677141, at *4.

First, neither the EEOC regulations nor the Civil Rights Act defines a "charge." Edelman v. Lynchburg College, 535 U.S. 106, 112 (2002). The Civil Rights Act states that charges of discrimination "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). Similarly, the EEOC regulations indicate that a charge "shall be in writing and signed and shall be verified."[3] 29 C.F.R. § 1601.9 (2000). The regulations further suggest that a charge should include: (1) the full name, address, and telephone number of the complainant; (2) the full name and address of the person against whom the charge is made, if known; (3) a clear and concise statement of the facts, including pertinent dates,

---

[3]    To be verified, a charge must be "shown to or affirmed before a notary public designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a).

constituting the alleged unlawful employment practices; (4) the approximate number of employees

of the employer, if known; and (5) a statement disclosing whether proceedings involving the alleged

unlawful employment practice have been commenced before a state or local agency charged with

the enforcement of fair employment practice laws and, if so, the date of such commencement and

the name of the agency.  Id. § 1601.12(a).  Even if a charge does not contain the suggested

information, the EEOC will deem a charge nonetheless minimally sufficient when it receives from

the charging party "a written statement sufficiently precise to identify the parties, and to describe

generally the action or practices complained of."  Id. § 1601.12(b).

Here, plaintiff's intake materials fully satisfied the EEOC's minimum requirements for a

charge.  The written intake materials were more than sufficiently precise to identify the parties and

describe generally the action or practices about which plaintiff complained.  The information sheet

included: (1) plaintiff's full name, address, telephone number, birth date, and social security number;

(2) defendant's name, address, and telephone number; (3) a clear and concise statement of facts,

including pertinent dates, constituting the alleged unlawful employment practices; and (4) the

approximate number of employees of defendant Wal-Mart.  See id. § 1601.12(a).  Further, the sexual

harassment questionnaire, retaliation questionnaire, and both affidavits were signed and verified.[4]

Plaintiff's "intake [materials] clearly satisf[y] the[] minimum requirements for the content of a

charge."  Jones, 2007 WL 2677141, at *4.

Second, the evidence demonstrates that plaintiff intended the intake materials to serve as a

charge.  In determining the existence of a manifestation of intent, Jones considered plaintiff's own

---

[4]     Plaintiff signed the sexual harassment and retaliation questionnaires "under penalty of
perjury" and swore in the presence of a notary that the two affidavits were "true and correct."
See 29 C.F.R. § 1601.3(a); see also supra note 3.

testimony.  2007 WL 2677141, at *5.  Here, more objective evidence supports the existence of a manifestation of intent.  The "content of the questionnaire[s] evidenced [plaintiff]'s intent to activate the administrative process."  <u>Holowecki</u>, 440 F.3d at 568.  Plaintiff gave detailed information regarding her employment circumstances, provided verified and sworn statements in all documents requiring such a signature, and included contact information for eyewitnesses.  <u>See</u> Dkt. # 14, Ex. 2-7.

Finally, the EEOC treated the intake materials as a charge.  In <u>Jones</u>, the court considered two types of evidence.   An EEOC agent testified that the EEOC routinely treated intake questionnaires as charges.  <u>Jones</u>, 2007 WL 2677141, at *5.  Further, the questionnaires stated that "if no other written statements [we]re filed, the EEOC w[ould] treat [the questionnaire] as a charge."  <u>Id.</u>  While plaintiff does not offer – at this early stage of the proceedings – EEOC testimony regarding the routine treatment of intake questionnaires, she does proffer several documents supporting the determination that the EEOC treated the intake materials as a charge: (i) an EEOC letter that confirmed plaintiff's correspondence relating to a "potential charge of discrimination" and that instructed her to contact the specified EEOC agent if she had any questions in reference to her "charge," Dkt. # 14, Ex. 8; (ii) the EEOC's first Notice of Charge of Discrimination mailed to defendant which indicated that "[a]n unperfected charge ha[d] been received by the [EEOC]," and that "[t]he [EEOC] staff [wa]s working to perfect the formal writing of the charge," <u>id.</u>, Ex. 9; (iii) the EEOC's right-to-sue letter in which the EEOC declined to check the box indicating that plaintiff's "charge was not timely filed," <u>id.</u>, Ex. 13; and (iv) the Privacy Act Statement which declared that the EEOC would consider the timely-filed intake materials to be a sufficient charge of discrimination if the Form 5, Charge of Discrimination was not filed within the 300 day

9

limitations period, id., Ex. 4, at 6.[5]  Clearly, under Jones, this evidence supports the conclusion that the EEOC treated plaintiff's intake materials as a charge.

In sum, the Court concludes that plaintiff manifested her intent to initiate the administrative process by filing sufficiently detailed intake materials with the EEOC within 300 days of her allegedly unlawful termination, and that the EEOC ultimately treated the documents as a charge. Plaintiff has overcome her administrative hurdle, therefore, and has stated a claim upon which relief may be granted.

IV.

The Court must now consider whether the allegedly unlawful acts which occurred outside the statutory period are actionable.[6]  "In addressing the issue whether an EEOC charge was filed on time, [the Supreme Court] ha[s] stressed the need to identify with care the specific employment practice that is at issue." Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2167 (2007). "A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." Morgan, 536 U.S. at 120.

---

[5]     The Court notes, sua sponte, that the EEOC's contradictory language in the information sheet indicating that the intake materials were not a charge of discrimination does not impact the analysis.  The Tenth Circuit has held that the EEOC's issuance of a dismissal and notice of right to sue letter demonstrates that the EEOC ultimately treated the intake materials as a formal charge. Jones, 2007 WL 2677141, at *5; see Wilkerson, 270 F.3d at 1321 ("the EEOC's ultimate response, combined with . . . other relevant facts, would convince a reasonable person that [plaintiff] manifested her intent to activate the administrative machinery.").

[6]     The EEOC charge was filed on February 13, 2006.  Consequently, any unlawful act occurring after April 19, 2005 is within the 300 day statutory period.

10

A hostile work environment claim generally consists of a series of harassing acts, "each of which may not be actionable on its own." Ledbetter, 127 S. Ct. at 2175 (internal citation marks omitted). The claim is "based on the cumulative effect of individual acts," which "cannot be said to occur on any particular day." Morgan, 536 U.S. at 115. To determine whether individual acts are part of the same hostile work environment claim, a court must look at whether "the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."[7] Holmes v. Utah, Dep't of Workforce Servs., 483 F.3d 1057, 1064 (10th Cir. 2007) (quoting Morgan, 536 U.S. at 120) (internal quotation marks omitted) (alteration in original); see Duncan v. Manager, Dep't of Safety, City and County of Denver, 397 F.3d 1300, 1308 (10th Cir. 2005).

---

[7]    Defendant Wal-Mart cites Davidson v. America Online, Inc., 337 F.3d 1179, 1184 (10th Cir. 2003), as providing the controlling three-part test for determining whether certain acts constitute a "continuing violation." See Dkt. # 16, at 2. This continuing violation test consists of three prongs: (i) subject matter, (ii) frequency, and (iii) permanence. Davidson, 337 F.3d at 1184. This Court finds that the Davidson test does not control on this issue, however. First, Davidson is distinguishable. Davidson involved an alleged failure to hire, an admittedly discrete act. Id. at 1185; see Morgan, 536 U.S. at 114 (identifying "termination, failure to promote, denial of transfer, or refusal to hire" as examples of discrete acts). While Barley does allege that Wal-Mart terminated her in retaliation for reporting the sexual harassment, Barley's hostile work environment claim is premised not on her firing but on the harassment that occurred in late 2004 and between April and May 2005.

Second, the Court has been unable to find post-Morgan Tenth Circuit cases, which entail sexual harassment and hostile work environment claims, that use the Davidson test. See Holmes, 483 F.3d at 1063-64; Duncan, 397 F.3d at 1309. This may be attributable to curious language in Morgan possibly affecting the veracity of the "permanence" prong, 536 U.S. at 117 n.11, as well as the fact that the case quoted by Davidson in support of its test has been at least partially overruled on other grounds. See 337 F.3d 1179 (quoting Mascheroni v. Bd. of Regents of the Univ. of Cal., 28 F.3d 1554, 1561(10th Cir. 1994)). Therefore, the Court declines to apply the Davidson three-part inquiry here.

The Supreme Court has recently held, however, that in a hostile work environment case, "the actionable wrong is the environment, not the individual acts that, taken together, create the environment."[8]   Ledbetter, 127 S. Ct. at 2175.   Here, Plaintiff alleges that from October or November 2004 through December 2004, her shift lead, Watson, continuously made inappropriate sexual advances toward her.   Upon returning from maternity leave in April 2005, plaintiff claims that co-workers immediately confronted her with allegations that she had engaged in sexual relations with Watson.   Similarly, Watson's uninvited sexual comments, innuendos, and jokes continued until plaintiff reported Watson's behavior to management in May 2005.   Plaintiff maintains that because her sexual harassment claim is based on a hostile work environment theory, the earlier misconduct falling outside the statutory period remains actionable.

Defendant counters plaintiff's arguments with several assertions.   Defendant maintains that the types of misconduct alleged by plaintiff are distinguishable and not the same type of employment action.   Plaintiff's allegations relating to the pre-April 2005 conduct concern Watson's behavior, whereas the allegations relating to the post-April 2005 conduct concern other co-workers' comments.   In making this argument, the Court finds that defendant has failed to fully read plaintiff's complaint, because Plaintiff pleads that Watson continued to sexually harass plaintiff in April and May 2005.   See Dkt. #2, at 3.   Next, defendant maintains that plaintiff's "four month leave of absence" precludes a finding that the harassment frequently occurred.   Dkt. # 16, at 3.   The Court

---

[8]      On the other hand, if the actionable wrong is not the environment, it is a "discrete" act, which constitutes a separate, actionable wrong that is temporally distinct.   Ledbetter, 127 S. Ct. at 2175.   Thus, a timely EEOC charge must be filed with regard to each discrete act.   Id. Moreover, according to the Supreme Court, Morgan made "perfectly clear" that alleged "'serial violations,' i.e., a series of actionable wrongs" constitute discrete acts of discrimination.   Id. (quoting Morgan, 536 U.S. at 113) (emphasis in original).

12

disagrees.  Plaintiff pleads that Watson's harassment continued unabated until she reported him to management in 2005.  Plaintiff's maternity leave does not alter the fact that Watson's inappropriate behavior resumed as soon as plaintiff returned to the deli department.  In fact, the only reason Watson's behavior stopped was because plaintiff took a medical leave of absence – not because she transferred to another department or Watson left Wal-Mart's employ.  See Holmes, 483 F.3d at 1064-65; Duncan, 397 F.3d at 1304-09.  At this stage of the proceedings, the Court must accept plaintiff's allegations as true and must construe them in the light most favorable to plaintiff.[9] Ramirez, 222 F.3d at 1240.

Accordingly, the Court concludes that Watson's allegedly continuous, inappropriate sexual behavior comprises the actionable wrong.  This actionable wrong created the "abusive working environment," Dkt. # 2, at 3, which in turn constitutes plaintiff's hostile work environment claim. Therefore, the allegedly unlawful acts which occurred prior to April 2005 fall within the statutory period and are not time-barred.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Dkt. # 8) is **denied**.

Dated this 3rd day of October, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[9]     The Court does not consider defendant's final argument that discrete acts cannot qualify as continuous, see Dkt. # 16, at 4, because the Court concludes that plaintiff's claim is addressed by Ledbetter – i.e., that the actionable wrong is the environment and not the individual acts that create the environment.